## Clairton Alderman's Election.

*Municipalities — Cities of the third class — Public officers — Aldermen— Elections—Acts of June 21, 1839, March 9, 1846, May 23, 1874, May 23, 1889, June 27, 1913, May 3, 1917, and July 27, 1917.*

1. Where, at a general election, a person is elected to the office of alderman in a city of the third class at a time when the city has but one ward, such person is entitled to his commission to office, although shortly thereafter, and before his commission shall have issued, the city is divided into two wards.

2. Since the Act of June 27, 1913, P. L. 568, a city of the third class may successfully function with one ward, and under the Act of May 23, 1874, P. L. 230, such city may elect one alderman for the city.

3. If the city, after such election, is divided into two wards, the alderman elected is entitled to his commission and to serve in the ward in which he has his residence.

4. The certificate of election of an alderman by the return officers is *prima facie* title to the office. The commission issued by the Governor is only evidence of such title.

5. The Act of May 3, 1917, P. L. 143, relates to special elections in cases of annexation of territory and not to a case of a division of a city of one ward into two.

6. Where a portion of a township is annexed to a city, if a justice of the peace resides in the portion not annexed, his right to his office continues; if he resides in the portion annexed to the city, his right to his office ceases.

Department of Justice. Opinion to Hon. Gifford Pinchot, Governor of Pennsylvania.

CAMPBELL, 1st Dep. Att'y-Gen., Dec. 31, 1925.—A protest has been filed against the issuance of a commission as alderman to B. B. Samuels, who has been returned as elected to that office for the City of Clairton, upon which protest a hearing was held on Dec. 23, 1925, at which the protestant and Samuels appeared in person and by counsel, as also the City Clerk of Clairton.

The records of the Secretary of the Commonwealth show the following facts:

1. The Boroughs of Clairton, North Clairton and Wilson, all of Allegheny County, were, by letters-patent dated Sept. 14, 1921, consolidated as the City of Clairton, a city of the third class, without division into wards.

2. At the time of consolidation there were three, and only three, duly commissioned acting justices of the peace within the three boroughs, the commission of each of whom expires Jan. 1, 1926. No alderman was elected therein until Nov. 3, 1925.

3. At the election held on Nov. 3, 1925, the electors of the City of Clairton elected B. B. Samuels as alderman. The return of the Prothonotary of Allegheny County certifies that Samuels filed his acceptance as alderman of the 1st Ward of the City of Clairton, which was later amended so as to show his acceptance as alderman of the City of Clairton.

At the hearing on this protest, a certified copy of the final order of the Court of Quarter Sessions of Allegheny County, at No. 35, February Sessions, 1925, Miscellaneous Docket, was furnished this department which will be filed with the Secretary of the Commonwealth. From said order the following facts appear:

1. By order of the said court, a special public election was duly held in the City of Clairton on Nov. 3, 1925, to secure the assent or dissent of the electors to a division of the city into two wards, as previously recommended by commissioners duly appointed, said proceedings being under the provisions of the Act of June 27, 1913, P. L. 568, as amended by Act of July 27, 1917, P. L. 1019.

2. The electors having assented to the same, the said court on Nov. 18, 1925, ordered and decreed that the said city should be divided into and consist of two wards, as designated in the decree, to be known as the 1st and 2nd Wards.

It is admitted by all parties concerned that B. B. Samuels is a resident of the 2nd Ward of Clairton.

The protestant contends (1) that the election of Samuels was not in conformity with the constitutional requirement that aldermen shall be elected in the several wards, districts, boroughs and townships by the qualified electors thereof, because the City of Clairton was not divided into wards at the time of the election; (2) that he is not entitled to his commission because he was not elected by the electors of the 2nd Ward, as subsequently erected, within which and for which he must now serve if commissioned; (3) that because of the creation of new wards in the City of Clairton, ward officers, including aldermen, could be elected only at a special election called for that purpose, and that no such special election was called; (4) that Jefferson Township, a portion of which was annexed to Clairton in 1924, and is now included within its 2nd Ward, had, at the time of annexation, two duly commissioned and acting justices of the peace, the term of one of which does not expire until Jan. 1, 1926.

These objections will be considered in numerical order.

1. Did the City of Clairton on Nov. 3, 1925, comprise one ward or district within the contemplation of article v, section 11, of the Constitution?

That section provides, *inter alia:* "Except as otherwise provided in this Constitution, justices of the peace or aldermen shall be elected in the several wards, districts, boroughs or townships by the qualified electors thereof at the municipal election in such manner as shall be directed by law and shall be commissioned by the Governor for a term of six years. . . . No person shall be elected to such office unless he shall have resided within the township, borough, ward or district for one year next preceding his election."

It is contended that because the City of Clairton on Nov. 3, 1925, was not divided into two or more wards, and that because its charter does not specify that the whole city comprises one ward, it did not contain a ward or district within the contemplation of the above-quoted section of the Constitution, and was, therefore, not entitled to elect an alderman. There is no reason or authority to support that position. The Third Class City Acts of May 23, 1874, P. L. 230, May 23, 1889, P. L. 277, and June 27, 1913, P. L. 568, nowhere specify a minimum number of wards, but each one presupposes one or more wards. This is illustrated by the fact that each of said acts provides for the division of wards and the creation or erection of a new ward out of parts of two or more wards: Article ii, section 1, Act of 1913, as amended by Act of July 27, 1917, P. L. 1019. No doubt, prior to the Act of 1913, provision was made at the time of incorporation of such cities for two or more wards, because of ward representation in councils, but since that act a city may

successfully function with only one ward, inasmuch as all city officers are elected at large.

We are of the opinion that on Nov. 3, 1925, the whole of the City of Clairton constituted one ward or district.

Therefore, the commissions of all justices of the peace in the district out of which Clairton was created being about to expire, and there being no alderman therein, the electors of the whole city were authorized to elect one alderman for the city at the election of Nov. 3rd, under the provision of section 32 of the Act of May 23, 1874, P. L. 230 (Pa. Stat., 4406), which is as follows: "Each of the wards of each of the said cities (third class) shall be entitled to elect one alderman, . . . and said alderman shall be elected at the municipal election next preceding the expiration of the commission of the justice of the peace, resident in the district out of which the said ward shall be created."

This provision is applicable to cities incorporated under subsequent acts: Com. ex rel. Harris v. Hastings, 16 Pa. C. C. Reps. 425; Harris's Application, 4 Dist. R. 320.

Samuels was duly elected to the office of alderman for the City of Clairton, filed his acceptance within the required time and the prothonotary has certified both the election and acceptance to the Secretary of the Commonwealth, and his commission must issue unless the division of the city into wards defeats his right thereto.

2. Effect of the division of the city into two wards upon the right of Samuels to be commissioned.

Samuels having been duly elected by the electors of the city at large, the subsequent procedure to be followed before he takes office is set forth in the Act of April 21, 1915, P. L. 142, which requires each alderman-elect, within thirty days after the election, if he intends to accept said office, to file his acceptance with the prothonotary of the Court of Common Pleas of the proper county, and requires the prothonotary to certify such election and acceptance to the Secretary of the Commonwealth, and proceeds, "whereupon the Governor shall commission for the full term such persons as shall appear to be duly elected and accepting."

We are thus convinced that the right of Samuels to this office and to his commission for the same was fixed and determined by the electors at the election. His certificate of election by the return judges constituted a *prima facie* title to the office: Kerr v. Trego, 47 Pa. 292, 296; Com. ex rel. v. Reno, 25 Pa. C. C. Reps. 442, 444, 446. "The acceptance of the office . . . is an after-matter, having no bearing on the merits or regularity of the election:" Battis v. Price, 2 Pearson, 456, 459. It is merely a formal statement of record that the alderman elected will accept the office and does not care to exercise his right to decline. The commission issued by the Governor is not the title to the office, but only evidence of it: Com. ex rel. v. Lentz, 13 Dist. R. 388, 389.

It is conceded that Samuels resided for one year preceding the election in that portion of the City of Clairton which now constitutes the 2nd Ward.

The division of Clairton into wards did not become effective until Nov. 18, 1925, the date of the final decree, which was after Samuels's right and title to the office of alderman had been determined.

His right to continue to exercise his office after the 2nd Ward was created is governed by section 1 of the Act of March 9, 1846, P. L. 105, which provides, *inter alia:* "In all cases of the creation of any new . . . ward in any city, . . . the commissions of . . . aldermen, within the respective territories out of which such . . . ward has been or may be created, shall continue for the

proper . . . ward in which such . . . aldermen may respectively reside for the balance of the official term."

Terms of aldermen are fixed by the Constitution and cannot be lessened by the legislature, hence the usual provisions for holding over where consolidation or sub-division of districts is provided: Com. ex rel. v. McAfee, 237 Pa. 320.

Samuels's right to his commission having been determined as of Nov. 3, 1925, it will be considered as if issued for the whole City of Clairton, and the 2nd Ward having been created out of the whole city, his commission shall continue for the ward in which he resides, to wit, the 2nd Ward.

His right to exercise the office is also limited by section 13 of the Act of June 21, 1839, P. L. 376 (Pa. Stat., 13007), which provides that during the continuance in office of aldermen, they shall respectively keep their offices in the ward for which they shall have been elected. So long as he continues to reside in the 2nd Ward of Clairton and therein keep his office, he shall be maintaining his office "in the ward for which (he) shall have been elected," to wit, the one ward which comprised the whole of the city at the time of his election.

The division of the City of Clairton into two wards subsequent to Samuels's election as alderman does not affect his right to a commission, but restricts the locality in which he must maintain his office to the 2nd Ward, in which he must continue to reside in order to retain his commission.

3. It was not necessary that a special election be called for election of aldermen or that an alderman be elected at a special election.

Section 3 of the Act of May 3, 1917, P. L. 143 (Pa. Stat., 4166), cited by protestant, provides that the court in its decree of annexation of land to a city of the third class shall make such order as will give the people of the annexed territory representation in the government of the said city by including said territory within the limits of an adjoining ward or wards, or by creating a new ward or wards thereof; and "shall, in case of the creation of new wards or ward, appoint the election officers and place for holding the first election of ward officers, and for that purpose may order a special election, if said court shall deem the same necessary."

This act does not apply to this situation. The calling of a special election is wholly discretionary with the court and was not done in this case for the purpose of electing ward officers; it would not have applied to Samuels, even if called, because he had already been elected; an alderman is not a ward officer within the contemplation of this act: Com. ex rel. Graham v. Cameron, 259 Pa. 209, 212, 213; Com. ex rel. Snyder v. Machamer, 5 Dist. R. 560; the act is limited to cases of annexation of territory, while the decree of the court in the Clairton case was for the division of one ward into two wards.

4. We do not know whether the justices of the peace for Jefferson Township, acting at the time of the annexation of a portion of that township to Clairton, resided in the portion so annexed or in the portion that remained in the township. If the latter, they continued to act for and within the township; if the former, their right to hold and exercise the office ceased with the annexation: Com. ex rel. Graham v. Cameron, 259 Pa. 209.

5. Several opinions of this department, particularly Stidfole's Case, 28 Pa. C. C. Reps. 389, are cited as sustaining the contention that this commission should be refused and the claimant to the office be put to a writ of mandamus to compel its issuance. Those opinions may be differentiated, because the records of the Secretary of the Commonwealth showed that there was no vacancy in the office for which the commission was sought. They involved the

question of law as to how many justices of the peace the respective boroughs were entitled to, and the department contended, and the court afterwards found, that no vacancies existed and, therefore, no commission could be issued.

On the other hand, this department ruled in Mutchler's Case, 45 Pa. C. C. Reps. 274, 25 Dist. R. 831, that such commissions should issue where the records of the Secretary of the Commonwealth show a vacancy to be filled and the election and acceptance of the applicant for the commission. In an opinion of this department, dated Dec. 15, 1917, reported in the Opinions of the Attorney-General for 1917-1918, the following facts appeared: Meyer "was elected an alderman for the City of Coatesville, without reference to any wards," and at the same election the city was divided into five wards. Held, that a commission should issue to Meyer for the ward in which he resided and that vacancies existed in all of the other wards in Coatesville, which, under the provision of section 3 of the Act of March 22, 1877, P. L. 12, were to be filled by appointment of persons residing in such other wards.

You are, therefore, advised that a commission should issue to B. B. Samuels as alderman for the 2nd Ward of the City of Clairton, and that after Jan. 1, 1926, a vacancy will exist in the office of alderman for the 1st Ward of the City of Clairton, which may be filled by the appointment by the Governor of one who resides in the said ward and who has resided therein for one year next preceding such appointment.

From C. P. Addams, Harrisburg, Pa.